IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MAHNAZ BEIGI HOSSAINI, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CV3052 |
| | ) | |
| v. | ) | |
| | ) | |
| ADEL VAELIZADEH, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant Adel Vaelizadeh's ("Vaelizadeh") motion to disqualify Paul Galter ("Galter") and his firm as counsel for plaintiff Mahnaz Beigi Hossaini ("Mahnaz"), (filing no. 2); Vaelizadeh's motion to quash and dismiss, (filing no. 4); Vaelizadeh's motion to take judicial notice, (filing no. 6); and Vaelizadeh's motion to extend or modify, (filing no. 16) . For the reasons set forth below the motions to disqualify, to quash service and to extend or modify are denied. The motion to take judicial notice is granted. The motion to dismiss is set for further briefing.

## BACKGROUND

Vaelizadeh, a resident of Florida, and Mahnaz, a resident of Nebraska, were involved in a relationship and have a child. Mahnaz initiated a paternity action against Vaelizadeh in the District Court of Lancaster County, Nebraska alleging that Vaelizadeh was the biological father of the child. Mahnaz was represented by attorney Terrance A. Poppe and Vaelizadeh was represented by attorney Sheri Workman. The rules of the District Court require mediation for matters involving custody or parenting time. Attorneys Poppe and Workman selected Paul Galter to mediate the dispute.

The purpose of the mediation was to help Mahnaz and Vaelizadeh reach an agreement on Vaelizadeh's parenting time with the minor child. Galter conducted a mediation session in

November of 2009 with both parties present, and had two additional sessions with Mahnaz. The parties could not reach an agreement on Vaelizadeh's visitation rights. The mediation was terminated.

After the custody dispute, the parties have apparently filed competing law suits against one another alleging various acts of malfeasance in connection with their courtship. Vaelizadeh filed suit in Broward County, Florida seeking the return of cash and property from Mahnaz and/or seeking damages for Mahnaz's alleged conversion of the property. The total damage claim exceeds $129,000. See Filing No. 18-2, p. 5.

For her part, Mahnaz filed suit against Vaelizadeh in the District Court of Lancaster County, Nebraska for damages Mahnaz allegedly suffered by being "solicited and induced" by Vaelizadeh to start a "personal relationship" with him, including recovery of certain legal fees he allegedly agreed to pay for her, costs and expenses associated with Mahnaz terminating her employment in order to plan a move to Florida, and costs and expenses incurred by Mahnaz in defending the lawsuit filed by Vaelizadeh in Florida. Mahnaz seeks a declaratory judgment regarding the claims asserted by Vaelizadeh in the Florida lawsuit. She alleges damages in the amount of $62,000.[1] Mahnaz retained Paul Galter – the mediator in her custody dispute with Vaelizadeh – to serve as her attorney in the Nebraska and Florida matters.

Vaelizadeh removed the Nebraska state case to federal court, (filing no. 1), and quickly moved to have Galter and his firm disqualified from representing Mahnaz in this case, alleging Galter has a conflict of interest because he served as the mediator in the custody dispute between the parties. Galter denies his conduct runs afoul of any ethical rules and seeks to

---

[1] This is the second time Mahnaz has filed a suit against Vaelizadeh for similar claims, with the addition of a claim for "anguish and humiliation" in the amount of $1,000,000 and total damages in the amount of $1,032,000. That case was removed to federal court, and subsequently dismissed by the plaintiff. The case now before the court also states a claim for "anguish and humiliation," but only in the amount of $30,000.

2

continue to serve as Mahnaz's attorney. In addition, Vaelizadeh has moved to quash service and to dismiss this case he received an Entry of Final Judgment in his favor in the Florida lawsuit. Filing No. 16-1.

## LEGAL ANALYSIS

### Disqualification of Galter

The matter of attorney disqualification is within the sound discretion of the court. See Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir. 1991). The burden of proving opposing counsel should be disqualified rests with the moving party, but "any legitimate doubts . . . must be resolved in favor of disqualification." Gifford v. Target Corp., 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010). However, decisions to disqualify a party's chosen counsel will be met with "particularly strict scrutiny" due to the potential for abuse. Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007).

When considering motions to disqualify, courts must balance the public policy concerns and the court's responsibility to uphold the integrity of judicial proceedings with a parties' right to select his or her own counsel.

> In determining whether to disqualify counsel, a court balances the interests and motivations of the attorneys, the clients, and the public. Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 592 (D.Minn.1986); Arnold, 2004 WL 2203410, at *13. Factors to be considered include a court's "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." Potash, 1993 WL 543013, at *16 (citing United States v. Agosto, 675 F.2d 965, 969 (8th Cir.1982)). Courts also take into account a party's "interest in a trial free from even the risk that confidential information has been unfairly used against it," Arnold, 2004 WL 2203410, at *5, as well as the "important public right" of a party to select its own counsel, Macheca Transport Co. v. Philadelphia Indemnity Insurance Co., 463 F.3d 827, 833 (8th Cir.2006).

Gifford, 723 F. Supp. 2d at 1117-8. In addition to public policy concerns, this court may also consider relevant rules of various codes of professional conduct, although such rules are not controlling. See NEGenR 1.7(b)(2); see also F.D.I.C. v. U.S. Fire Ins., Co., 50 F.3d 1304, 1314 (5th Cir. 1995); accord Agosto, 675 F.2d at 969 (finding the adopted ethical rules as one of the factors to be considered in supervising the members of its bar).

A review of pertinent Nebraska ethical rules reveal at least two applicable sections. Nebraska R. Prof. Cond. § 3-502.12 provides the following guidance:

> Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or a law clerk to such person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

In addition the Nebraska "Parenting Act" provides:

> No mediator who is also a licensed attorney may, after completion of the mediation process, represent either party in the role of attorney in the same matter through subsequent legal proceedings.

Neb. Rev. Stat. § 43-2939(3).

Relatively few courts have considered the disqualification of an attorney who has previously served as a mediator for a dispute between the parties. The most thorough discussion comes in the case of Poly Software International, Inc. v. Datamost Corporation, 880 F.Supp. 1487, 1494 (D. Utah 1995) and proposes a slightly more restrictive standard than the one identified under the Nebraska ethical rules. In addressing whether an attorney should be dismissed because he previously served as a mediator for the parties the court set forth the following rule:

> Where a mediator has received confidential information in the course of mediation, that mediator should not thereafter represent anyone in connection with the same or a substantially factually related matter unless all parties to the mediation proceeding consent after disclosure.

Poly Software, 880 F.Supp. at 1494. The court went on to explain the reasoning for its rule preventing representation not only in identical matter that was mediated, but in "substantially related" matters as well:

> This rule also takes into account some important policy considerations. If parties to mediation know that their mediator could someday be an attorney on the opposing side in a substantially related matter, they will be discouraged from freely disclosing their position in the mediation, which may severely diminish the opportunity for settlement. If, on the other hand, the disqualification net is thrown too wide, attorneys will be discouraged from becoming mediators. The "substantially factually related" standard best balances those two interests. It encourages parties to freely disclose their positions during mediation by assuring them that the specific information disclosed will not be used against them at a later time. It also limits disqualification to subsequent situations where there is a substantial factual nexus with the previously mediated dispute.

Id.

Cases are typically considered "substantially related" when there is a "genuine threat that the affected attorney may have received confidential information in the first cause that could be used against the former client in the present cause. . . ." Jacob North Printing Co., Inc. v. Mosley, 779 N.W.2d 596 (Neb. 2010); see also United States v. Poe, 428 F.3d 1119, 1125 (8th Cir. 2005). Thus, the court must engage in a "careful comparison between the factual circumstances and legal theories of the two cases." County of Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000).

In this case, disqualification of Galter is not justified under the ethical guidelines set forth in Nebraska or under the lower "substantially related" standard established in Poly

<u>Software</u>. The provisions of the Nebraska professional code and statutes governing family law mediators are not applicable because Galter is not attempting to represent Mahnaz in the same "matter" he mediated between Mahnaz and Vaelizadeh. The mediated matter was a custody dispute, apparently involving only the disagreement in how often and under what conditions Vaelizadeh would be able to visit his minor child. The current case is, at its core, a suit for monetary damages due to the action of the parties and the exchange of promises and gifts during the relationship between Mahnaz and Vaelizadeh. Although the Nebraska ethics rules would prevent Galter from representing either party in the litigated custody action, the rules do not appear to prevent Galter from representing Mahnaz in a separate matter.

Even if the court applies the "substantially related" test, as Vaelizadeh seems to advocate, Galter's disqualification is still not required. Although Vaelizadeh argues he conveyed confidential information to Galter, he does not assert in what way the confidential information could be used to Vaelizadeh's disadvantage in the current case. Indeed, a careful comparison of the facts and legal theories between the two cases indicate they have little in common except for the fact Mahnaz and Vaelizadeh are involved in both. The case in which Galter served as a mediator was a custody dispute which apparently involved only discussions regarding the terms and conditions of Vaelizadeh's visitation rights. The current case involves disputes over property rights and various acts of each party during their courtship. There is no mention in any of the pleadings regarding the custody or visitation of their minor child. Nor does Vaelizadeh present any evidence that any information gleaned by Galter in the custody dispute will be relevant to this case. His bald assertions that Galter will "use every possible unconstitutional lynchpin to punish the child, punish the father for the breakup of a marriage engagement . . ., inflame the judge or jury against the father of the child, including the most vicious and inappropriate forms of service of process" are unsupported by any actual evidence. In short, Vaelizadeh has not met his burden of proving Galter should be disqualified in this case.

**Motion to Quash**

Vaelizadeh argues service of process should be quashed because he was served at the District Court of Lancaster County while he was in Lincoln on a matter involving the custody of Vaelizadeh and Mahnaz's child. Traditionally, parties from distant states have enjoyed immunity from service of process while appearing in court on an unrelated matter. See Hardie v. Bryson, 44 F.Supp. 67 (E.D. Mo. 1942). However, this rule is a "privilege of the court, rather than of a [party]. . . . It can be exercised or not, in each particular case, as the purpose of substantial justice may seem to require." United States v. Hefti, 879 F.2d 311, 315 (8th Cir. 1989). Thus, "the privilege should not be enlarged beyond the reason upon which it is founded, and . . . it should be extended or withheld only as judicial necessities require." Id. at 316; see also In re Subpoenas to Fish & Neave, 519 F.2d 116, 118 (8th Cir. 1975) (finding the court can modify the rule of immunity based on the facts of the case).

In this case, the court can find no reason to quash the service of process. Vaelizadeh was personally served after a hearing in the District Court of Lancaster County, Nebraska. The hearing was held, in part, on Vaelizadeh's motion to have Mahnaz held in contempt for violating their child visitation arrangement. Vaelizadeh has apparently availed himself to the Nebraska court system and was in the state voluntarily for his own benefit and thus, the court does not believe quashing service in this instance is necessary or justified.[2] Vaelizadeh's motion to quash (filing no. 4) is denied.

---

[2] There is some disagreement about the number of law enforcement officials present in the courtroom at the time Vaelizadeh was served. However, Vaelizadeh stops short of stating he was physically restrained by the law enforcement officers or that his movements were restricted. Although Vaelizadeh states he was "corralled" by the deputies, he does not unequivocally state he was unable to leave the courtroom or was forced to sit at the counsel table until he was served. While the court is skeptical that Vaelizadeh was surrounded by four "well armed" "beefy" deputies at the direction of Mahnaz (or anyone else), even if his recollection of the events is accurate, he does not argue he was detained in such a way as to make the service invalid.

**Defendant's Motion to Dismiss and Motion to Extend or Modify Previous Order**

In conjunction with his motion to quash, Vaelizadeh also filed a motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction (filing no. 4). Vaelizadeh argues that the subject matter of this suit has been decided by a court in Florida and that this court has no personal jurisdiction over him.[3]

The issues of personal jurisdiction, res judicata and collateral estoppel have not been fully addressed by the parties, in part because Mahnaz was waiting for a decision on whether her counsel would be disqualified. Accordingly, the parties are instructed to further brief these issues, in compliance with this courts previous order, (filing no. 13) and specifically discuss how the ruling in the Florida court impacts this court's ability to adjudicate this case. Vaelizadeh's brief on the outstanding issues shall be filed on or before August 22, 2011;[4] Mahnaz's responsive brief shall be filed on or before September 9, 2011; and any reply thereto shall be filed on or before September 16, 2011.

---

[3] To the extent the plaintiff has questioned whether this court has subject matter jurisdiction under 28 U.S.C. § 1332, the court finds the diversity of citizenship and amount in controversy requirements have been met. Mahnaz is a citizen of Nebraska and Vaelizadeh is a citizen of Florida. Although the face of the complaint file in the District Court of Lancaster County asserts damages in the amount of $62,000, it also seeks a declaratory judgment and asks the court to determine "[w]hether [Vaelizadeh] is entitled to a return of the gifts made to [Mahnaz]" and "[w]hether [Mahnaz] is indebted to Defendant in connection with the various allegations set forth in the complaint filed in the State of Florida." Filing No. 1-2, ¶ 17. The Florida suit referred to in the complaint asserts Mahnaz owes Vaelizadeh various items of personal property and cash in excess of $120,000. Where the removed case involves injunctive or declaratory relief, the amount in controversy is measured by the value of the right sought to be enforced. See, e.g., Burns v. Mass. Mut. Life Ins. Co., 820 F.2d 246, 248 (8th Cir. 1987) (when injunctive relief is sought the amount in controversy is determined by value to the plaintiff). Thus, the value to Mahnaz exceeds the statutorily required amount of $75,000, and this court has subject matter jurisdiction.

[4] The court is aware Vaelizadeh has addressed these issues to some extent in his brief in support of his motion to extend, (filing no. 17). If he intends to rest on the arguments presented in that brief he is instructed to inform the court and Mahnaz that he intends to do so.

IT IS ORDERED:

a. Defendant's motion to disqualify attorney Paul Galter (filing no. 2) is denied.

b. Defendant's motion to quash service and dismiss (filing no. 4) is denied in part, as provided above. The parties shall brief the issues of jurisdiction, collateral estoppel, res judicata and abstention in accordance with the schedule outlined in this memorandum and order.

c. Defendant's motion to take judicial notice (filing no. 6) is granted.

d. Defendant's motion to extend or modify (filing no. 16) is denied as provided above.

e. The clerk shall not term filing no. 4 at this time, and it remains referred to the undersigned magistrate judge for findings and a recommendation.

August 4, 2011

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.